UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:16-cr-319-SDM-LSG
    8:20-cv-1280-SDM-LSG

FAYEZ ABU-AISH
_____

**ORDER**

Fayez Abu-Aish moves under 28 U.S.C. § 2255 to vacate his convictions and sentences for conspiracy to possess with intent to distribute a mixture containing a detectable amount of XLR-11 and distribution of a substance containing a detectable amount of XLR-11, for which he was imprisoned for one-hundred-sixty-eight months.[1]

A jury found Fayez and his brother, Nedal, guilty of the crimes (Crim. Docs. 122 and 125), and the court of appeals affirmed the convictions and sentences. *United States v. Abu-Aish*, 758 F. App'x 798 (11th Cir. 2018). At trial, "[t]he evidence presented indicated that Fayez and Nedal manufactured and packaged significant quantities of [XLR-11] in a clandestine lab, sold it out of trash bags on the street, and had suggested to a buyer (an undercover officer) that he should avoid being caught with the product." *Abu-Aish*, 758 F. App'x at 800.

---

[1] After the President of the United States commuted Fayez's prison sentence (Doc. 41), Fayez was released from prison and began serving a term of supervised release.

Fayez asserts that his attorney deficiently performed by failing to subpoena records that demonstrate that the brothers never ordered XLR-11 for their store, by failing to advise Fayez that the prosecutor extended a plea offer, by failing to object to allegedly false testimony by a detective, and by failing to object to a two-level enhancement under the United States Sentencing Guidelines for possessing a firearm.  (Docs. 1 and 2)

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

"'[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs an ineffective assistance of counsel claim and places a heavy burden on a defendant:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

A defendant cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  "[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

## DISCUSSION

**Ground One:**

Fayez asserts that his attorney deficiently performed by failing to subpoena records that demonstrate that the brothers never ordered XLR-11 for their store. (Doc. 1 at 4) He contends that these records demonstrate that he did not knowingly

distribute XLR-11. (Doc. 1 at 4)

Because Fayez fails to submit the records that his attorney would obtain with a subpoena, his claim is speculative. *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) ("As we have explained, '[s]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).

Also, the opinion by the court of appeals on direct appeal describes evidence at trial that proved that Fayez knowingly possessed XLR-11 (Crim. Doc. 173 at 4–5) (italics in original):

> The question is thus whether — viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict — a rational trier of fact could have found that the Abu-Aishes knew they were working with XLR-11. The evidence presented indicated that Fayez and Nedal manufactured and packaged significant quantities of product in a clandestine lab, sold it out of trash bags on the street, and had suggested to a buyer (an undercover officer) that he should avoid being caught with the product. This evidence supported the jury's finding that the brothers knowingly dealt with *a* controlled substance.
>
> The government also had to show, of course, that the brothers knowingly dealt with *the* controlled substance of XLR-11. In *United States v. Clay*, we noted that although "the government's evidence of [the requisite mens rea] was circumstantial . . . guilty knowledge can rarely be established by direct evidence." 832 F.3d 1259, 1309 (11th Cir. 2016) (internal quotation marks omitted), *cert. denied*, 137 S. Ct. 1814 (2017). Thus, "[m]ens rea elements such as knowledge or intent may be proven by circumstantial evidence." *Id.* We find that a reasonable juror could infer from the substantial circumstantial evidence presented that Fayez and Nedal knew that the mixture that they possessed and distributed contained XLR-11.

Even if records demonstrated that that the brothers never ordered XLR-11 for

their store, other evidence proved that the brothers operated a clandestine laboratory, sold XLR-11 to persons on the street, stored the XLR-11 in trash bags, and warned an undercover officer who purchased the XLR-11 to "be safe and be cautious." (Crim. Docs. 149 at 116 and 173 at 4–5) Because the subpoenaed records would not refute this other incriminating evidence of Fayez's criminal intent, Fayez fails to demonstrate prejudice under *Strickland*. *Aldrich*, 777 F.2d at 637. *Solomon v. Kemp*, 735 F.2d 395, 402 (11th Cir. 1984). Ground One is denied.

**Ground Two:**

Fayez asserts that his attorney deficiently performed by failing to advise him that the prosecutor extended a plea offer. (Doc. 1 at 5) He alleges that after trial he first learned that the prosecutor had extended an offer. (Doc. 2 at 2) Fayez alleges that, if his attorney had timely advised him of the offer, he would have accepted the offer and pleaded guilty. (Doc. 2 at 2)

The United States submits with its response an affidavit by Fayez's attorney, a letter from Fayez's attorney to Fayez disclosing the plea agreement, and billing statements by Fayez's attorney. (Doc. 18-1) Also, the United States submits an affidavit by Nedal's attorney, e-mails between Fayez's attorney and Nedal's attorney, and notes by Nedal's attorney created during a joint defense meeting. (Doc. 18-2) In the plea agreement, the prosecutor agreed to recommend that Fayez receive a sentence within the advisory range under the Sentencing Guidelines, if Fayez pleaded guilty to the conspiracy charge. (Doc. 2-1 at 5–8) In his affidavit, Fayez's attorney stated that before trial he reviewed the plea agreement with Fayez.

(Doc. 18-1 at 3) Fayez's attorney swore that Fayez rejected the offer and insisted on exercising his right to a jury trial. (Doc. 18-1 at 3–4) Handwritten notes by Nedal's attorney confirm a discussion about the plea agreement during a joint defense meeting. (Doc. 18-2 at 13) Because resolving this dispute of material fact requires a credibility determination, an earlier order granted Fayez an evidentiary hearing. (Doc. 20)

At the evidentiary hearing, the parties stipulated to the admission of the affidavits by the attorneys, handwritten notes by Nedal's attorney, text messages between Nedal's attorney and Fayez's attorney, and e-mails between Nedal's attorney, Fayez's attorney, and the prosecutor. (Docs. 33, 34, and 36 at 5–6)

Fayez testified that on October 27, 2016, he met with his attorney, Nedal, and Nedal's attorney. (Doc. 36 at 11, 23) Fayez denied that either attorney informed him that the prosecutor extended a plea offer. (Doc. 36 at 12, 19, 23) Fayez testified that he learned about the plea offer after sentencing when he asked his attorney and the prosecutor's office for records related to his case. (Doc. 36 at 15–18) Fayez testified that he learned that his attorney mailed the plea agreement to him at the address of his store and explained that he did not receive mail at the store because a fire destroyed the store. (Doc. 36 at 21–22)[2] Fayez testified that, if both attorneys had informed him and Nedal that the prosecutor extended the plea offer, he and Nedal would have accepted the offer, pleaded guilty, and cooperated with the

---

[2] Fayez introduced into evidence an article in the Tampa Bay Times reporting that, on October 17, 2016, a fire destroyed his store. (Doc. 34-4)

- 6 -

prosecutor. (Doc. 36 at 25, 39–40)

Fayez's attorney, who practiced federal criminal defense for over twenty years, testified that he routinely both informs a client about a plea offer when the prosecutor extends an offer and discusses with the client the terms of the offer and an estimated sentence. (Doc. 36 at 46–47) Fayez's attorney testified that the letter and the copy of the plea agreement that he mailed to Fayez's store did not return undeliverable. (Doc. 36 at 47) Fayez's attorney testified that, on October 27, 2016, before a joint defense meeting, he met with Fayez, presented to Fayez a copy of the plea agreement, and discussed with Fayez the terms of the agreement. (Doc. 36 at 47–48, 50, 73, 91) Fayez's attorney testified that, after learning about the plea offer, Fayez rejected the offer and insisted that he was innocent. (Doc. 36 at 48) Fayez's attorney testified that, before and after trial, Fayez never wavered from his belief. (Doc. 36 at 44–45, 50, 81–82, 86)

Fayez's attorney acknowledged that, on October 26, 2016, the day before the joint defense meeting, he moved to continue trial. (Doc. 36 at 67–71) In the motion, Fayez's attorney described Fayez's mental state as "frayed" because the fire recently destroyed the store. (Docs. 34-3 and 36 at 69, 78) However, Fayez's attorney testified that, despite the fire, Fayez participated during the meeting on October 26, 2016, and persisted in his belief that he was innocent. (Doc. 36 at 78–82)

Nedal did not testify. Nedal's attorney testified that, on October 27, 2016, he met with Nedal, Fayez, and Fayez's attorney to discuss the terms of the plea agreement. (Doc. 36 at 100–02) During the meeting, Nedal's attorney gave to Nedal

a copy of the agreement and asked Fayez to assist as an interpreter. (Doc. 36 at 101, 121, 141–42) Nedal's attorney described the conversation about the terms of the agreement as follows (Doc. 36 at 102–03):

| | |
|---|---|
| [Prosecutor:] | What specifically do you recall being discussed with Nedal Abu-Aish about the plea agreement that the United States had tendered for his consideration? |
| [Nedal's attorney:] | So, we discussed what the offer was, what he would be pleading to. We discussed possible penalties of that. We discussed, and I did an actual calculation of what I believed his guideline range would be, if he accepted the plea, which included acceptance. And then there [were] also the additional terms in the plea agreement we went through, including appellate waivers, cooperation, and the standard language, fines, that sort of thing. |
| [Prosecutor:] | You were present today when [Fayez] testified about that meeting, correct? |
| [Nedal's attorney:] | I was. |
| [Prosecutor:] | And he denied that any such conversation took place, whether he was translating it or not, correct? |
| [Nedal's attorney:] | Correct. |
| [Prosecutor:] | Was this conversation repeated when it was a joint meeting involving [Fayez's attorney] as well? |
| [Nedal's attorney:] | It was, because we — I know we discussed it again, because this was actually the first — the first case that I had represented a co-defendant with [Fayez's attorney]. And I specifically recall [Fayez's attorney] has a unique way of drawing pictures on his whiteboard in his office. So, I know we discussed this again [at] a joint meeting, because I recall him |

- 8 -

drawing pictures on his whiteboard.

The prosecutor introduced into evidence handwritten notes by Nedal's attorney. In a handwritten note titled "10/27/16 — Joint Meeting," Nedal's attorney wrote "Plea Agreement" and an estimated sentence under the Sentencing Guidelines. (Docs. 33-3 at 4 and 36 at 103–04)

In another handwritten note titled "10/28/16 — Meeting at [the office of Fayez's Attorney]," Nedal's attorney wrote the letters "P/A," "reviewed the facts," and "G/L still not acceptable." (Doc. 33-3 at 13) Nedal's attorney testified that, during this joint defense meeting, both Fayez and Nedal refused to accept the factual basis for the plea. (Doc. 36 at 109) Nedal's attorney testified that, during another joint defense meeting, both Fayez and Nedal proposed that Nedal accept full responsibility for the crimes and ask the prosecutor to dismiss the charges against Fayez. (Doc. 36 at 111, 137) Nedal's attorney rejected the proposal because the proposal was inconsistent with the evidence in discovery and violated the rules governing professional conduct of an attorney. (Doc. 36 at 111)

Nedal's attorney acknowledged that, around the time of the discussion of the plea agreement, a fire destroyed the brothers' store. (Doc. 36 at 130–31) Nedal's attorney testified that, despite the fire, Fayez and Nedal both participated during the meeting and discussed the evidence in the case. (Doc. 36 at 132–33)

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). "[A]s a general rule, defense counsel has the duty to communicate

- 9 -

formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . ." *Frye*, 566 U.S. at 147. "To establish prejudice . . ., it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147.

Fayez's attorney and Nedal's attorney testified more credibly than Fayez. The handwritten notes by Nedal's attorney (Doc. 33-3 at 4, 13), a billing statement by Fayez's attorney (Doc. 33-2 at 8), and text messages between Nedal's attorney and Fayez's attorney (Doc. 33-4 at 2) demonstrate that a joint defense meeting occurred on October 27, 2016. The handwritten notes by Nedal's attorney further demonstrate that both attorneys discussed the plea agreement with Fayez and Nedal and an estimated sentence under the Sentencing Guidelines. (Doc. 33-3 at 4, 13) The testimony by Fayez's attorney and Nedal's attorney, supported by these documents, credibly demonstrates that Fayez's attorney communicated the plea offer to Fayez.

Also, Fayez's attorney credibly testified that Fayez refused to accept the plea offer. In a note dated October 28, 2016, when a second joint defense meeting occurred, Nedal's attorney wrote "P/A" and "G/L still not agreeable" (Doc. 33-3 at 13), which demonstrates that both Fayez and Nedal rejected the offer because the estimated sentence under the Sentencing Guidelines exceeded the prison sentence that both would accept. (Doc. 45 at 109) Also, during an allocution at sentencing, Fayez stated (Crim. Doc. 153 at 42): "I've been here in the United States twenty-five years. I [have] never done any mistake. I never broke any law. I [have] never [been] involved with any activity. For something I think is legal and find out it's illegal." Even after the jury found Fayez guilty, Fayez persisted in his claim that he was innocent. The testimony by Fayez's attorney, supported by these documents, demonstrates that Fayez refused to accept the plea offer. Consequently, Fayez's claim is meritless. *Frye*, 566 U.S. at 147. Ground Two is denied.

**Ground Three:**

Fayez asserts that his attorney deficiently performed by not objecting during trial to allegedly false testimony by a detective. (Doc. 1 at 7) At trial on direct examination, the detective testified that he purchased from Nedal a large quantity of synthetic cannabinoids (Crim. Doc. 149 at 116–17):

> [Detective:]   About this same time [the store clerk] came from the back room with a grocery bag full of packets of synthetic cannabinoids. [The store clerk] and I went to the back corner of the store, you know, out of eyesight of everybody that would be coming and going from the store, you know, kind of hide what we were doing.

- 11 -

|  |  |
|---|---|
|  | Back there, I exchanged four hundred dollars for the packets of synthetic cannabinoids. He explained to me, you know, the types that he had put in the bag and, you know, various name brands [ ] of the synthetic cannabinoids. |
|  | . . . |
|  | I returned to the front of the store, where [Nedal] was still located, and he took the bag from me and went back towards the back of the room again, placing it inside a second plastic bag to conceal the contents, because you could see through the one bag. After that, I — you know, maybe a little bit more small talk about something unrelated, and I left the store with the synthetic cannabinoids. |
| [Prosecutor:] | Did either of these two individuals ring this sale up on the cash register in the store? |
| [Detective:] | No, sir. |
| [Prosecutor:] | Did they give you any form of receipt for your purchase? |
| [Detective:] | No, sir. |

On cross-examination, the detective testified that he did not know whether Nedal later placed in the cash register the money that the detective gave Nedal for the purchase of the synthetic cannabinoids (Crim. Doc. 149 at 151–52):

| | |
|---|---|
| [Fayez's attorney:] | Let me go back to this. After you made your purchase back in this room — area over here — |
| [Detective:] | Yes, sir. |
| [Fayez's attorney:] | — did you go out this particular way or did you come around and go this way? |
| [Detective:] | The second option, I walked down the |

| | |
|---|---|
| | path where this gentleman with the hat is standing. |
| [Fayez's attorney:] | And you walked on out of the store? |
| [Detective:] | Yes, sir. |
| [Fayez's attorney:] | You didn't stop anywhere along the way? |
| [Detective:] | I may have stopped, like I said, [to] make small talk. But, as far as stopping for a significant amount of time, or for anything relevant to the investigation, I don't believe so. |
| [Fayez's attorney:] | And you don't know if — you made the purchase back here, but you don't know if that money was ever recorded in the register or not, correct? |
| [Detective:] | I made the purchase to the left. I don't know what they did with the money after I left, no, sir. |
| [Fayez's attorney:] | So, it certainly could have been put into the register, correct? |
| [Detective:] | It may have been. I can't tell you if it was or not. I mean, if we're playing a game of possibilities, yes, it was possible. |

Also, on direct examination, the detective testified that Nedal warned the detective to "be safe and be cautious" and to "not get caught" with the synthetic cannabinoids (Crim. Doc. 149 at 116):

| | |
|---|---|
| [Detective:] | And during this discussion, you know, we discussed the price break, and if I was to purchase "X" amount of bags, how low the prices would go. During the course of this conversation, [Nedal] explained, you know, to be safe and be cautious, and to not get caught with, you know, the items that I was purchasing. And I explained to him that wouldn't be an issue, that, you know, my father and I had a convenience |

> store up in Brooksville, and that I wanted to see how, you know, selling this product — you know, how well I could with it before I came back to purchase additional quantities.

On cross-examination, the detective admitted that Nedal did not tell the detective, "Don't get caught" (Crim. Doc. 149 at 156–57):

| | |
|---|---|
| [Fayez's attorney:] | You mentioned, while you were testifying, that — you [ ] — used the term, "Don't get caught." Do you remember using that term? |
| [Detective:] | Yes, sir. |
| [Fayez's attorney:] | That term was never utilized by Nedal, was it? |
| [Detective:] | No, sir. |
| [Fayez's attorney:] | That's what you told the jury? |
| [Detective:] | Yes, sir. |
| [Fayez's attorney:] | "Don't get caught." But he never said that, did he? |
| [Detective:] | No, sir. |

Fayez contends that the detective's testimony on cross-examination demonstrates that the prosecutor knowingly presented false testimony by the detective on direct examination. (Doc. 2 at 4–5) Fayez asserts that his attorney deficiently performed by not objecting to the detective's testimony. (Doc. 2 at 4–5)

In a criminal trial a jury determines whether testimony is false. Consequently, a trial judge will not exclude testimony because of falsity, and an attorney instead will either cross-examine a witness or introduce evidence to demonstrate that testimony is false. Because an objection to the detective's testimony based on falsity

would not succeed, Fayez's attorney did not deficiently perform. *Brewster v. Hatzel*, 913 F.3d 1042, 1056 (11th Cir. 2019) ("Defense counsel, of course, need not make meritless motions or lodge futile objections.").

Also, on direct examination, the detective testified that neither Nedal nor the store clerk "[rang the] sale up on the cash register in the store," or "[gave] any form of receipt for [the] purchase." (Crim. Doc. 149 at 117)  On cross-examination, the detective testified that he did not "know what they did with the money after [he] left," and that either Nedal or the store clerk "possibly" placed the money into the register.  (Crim. Doc. 149 at 151–52)  Because the detective's testimony on cross-examination did not contradict his testimony on direct examination, Fayez fails to demonstrate that the detective falsely testified about the money.

Lastly, because Fayez's attorney successfully impeached the detective about Nedal's utterance of the words, "Don't get caught," and argued in closing that the impeachment demonstrated the detective's lack of credibility (Crim. Doc. 150 at 139), Fayez fails to demonstrate a reasonable probability that the outcome at trial would change if Fayez's attorney objected. *Strickland*, 466 U.S. at 694.  Ground Three is denied.[3]

---

[3] Generously construed, Fayez's memorandum asserts that the prosecutor violated *Giglio v. United States*, 405 U.S. 150 (1972), by presenting the detective's allegedly false testimony. (Doc. 2 at 10–11) Because trial counsel successfully impeached the detective at trial, Fayez fails to demonstrate that the prosecutor suppressed any evidence. *Hammond v. Hall*, 586 F.3d 1289, 1309 (11th Cir. 2009). Because trial counsel argued in closing that the alleged misrepresentations demonstrated the detective's lack of credibility (Crim. Doc. 150 at 139, 147–48), any *Giglio* error does not substantially and injuriously affect the jury's verdict. *Phillips v. United States*, 849 F.3d 988, 993 (11th Cir. 2017).

**Ground Four:**

Fayez asserts that his attorney deficiently performed by not objecting to a two-level enhancement under the United States Sentencing Guidelines for possessing a firearm. (Doc. 1 at 8) However, in a sentencing memorandum, Fayez's attorney objected to the two-level enhancement. (Crim. Doc. 119 at 4) Also, at sentencing, Fayez's objected to the two-level enhancement, and the objection was overruled. (Crim. Doc. 153 at 27–33) Because Fayez's attorney twice objected, the record refutes Fayez's claim.

Generously construed, Fayez's memorandum asserts that the two-level enhancement was erroneously imposed. (Doc. 2 at 12–13) A claim based on a misapplication of the Sentencing Guidelines is not cognizable on collateral review. *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) ("When a prisoner [ ] alleges that his 'sentence was imposed in violation of the . . . laws of the United States . . . or is otherwise subject to collateral attack,' a district court lacks the authority to review the alleged error 'unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice.'") (citations omitted).

The jury found Fayez guilty of conspiracy to possess with intent to distribute XLR-11 and two counts of distribution of XLR-11. (Crim. Doc. 122) Fayez faced a statutory maximum sentence of twenty years in prison for each conviction and received a sentence of 168 months in prison. (Crim. Doc. 122) 18 U.S.C. § 3584(a) (2014). 21 U.S.C. § 841(b)(1)(C) (2014). Because Fayez received a sentence below

- 16 -

the statutory maximum and because he does not assert a miscarriage of justice based on actual innocence, his claim on collateral review is meritless. *Spencer*, 773 F.3d at 1139 ("When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice.").

"The Sentencing Guidelines provide for a two-level sentence enhancement '[i]f a dangerous weapon (including a firearm) was possessed[.]'" *United States v. Graham*, 123 F.4th 1197, 1288 (11th Cir. 2024) (quoting §2D1.1(b)(1), U.S.S.G.). "The commentary for Section 2D1.1(b)(1) provides that '[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" *Graham*, 123 F.4th at 1288 (quoting §2D1.1(b)(1) n.11(A), U.S.S.G.). "The government bears the initial burden of showing by a preponderance of the evidence that a firearm was present at the site of the charged conduct or that the defendant possessed a firearm during conduct related to the offense of conviction." *Graham*, 123 F.4th at 1288. "If the government meets its initial burden, 'the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was clearly improbable.'" *Graham*, 123 F.4th at 1288 (citation omitted).

"A firearm enhancement may also apply to a defendant when the firearm is possessed by a co-conspirator." *Graham*, 123 F.4th at 1288. "[T]he government must show that '(1) the possessor of the firearm was a co-conspirator, (2) the

- 17 -

possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant.'" *Graham*, 123 F.4th at 1288.

"As to the reasonable foreseeability of the firearm's usage, [ ] 'numerous cases have recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic.'" *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) (citation omitted). "To that end, [ ] it [is] reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs . . . even where defendants claim they were unaware of the firearm possession." *Pham*, 463 F.3d at 1246.

When executing a search warrant at Nedal's home, police found the firearm and $93,000.00 in cash in the safe, and other items in the home, including small packages of synthetic cannabinoids and a ledger with a list of different brands of synthetic cannabinoids and quantities of different sized packages. (Crim. Docs. 109 at 5–6 and 149 at 140–41) Because the prosecutor demonstrated that Nedal kept the firearm at his home where he engaged in the distribution of XLR-11, that Nedal and Fayez jointly engaged in the distribution of XLR-11, and that Fayez could reasonably foresee that Nedal would possess a firearm in furtherance of the distribution of XLR-11, the enhancement for possessing the firearm applied. *United States v. Alred*, 144 F.3d 1405, 1420 (11th Cir. 1998) ("Actual knowledge of the coconspirator's firearm possession by the convicted defendant is not required for the

enhancement to apply, but possession must be reasonably foreseeable."). Ground Four is denied.

Fayez's motion under Section 2255 to vacate, set aside, or correct his sentence is **DENIED**. The clerk is directed to enter a judgment against Fayez, close this case, and enter a copy of this order in 8:16-cr-319-SDM-LSG.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Fayez fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). To appeal *in forma pauperis,* Fayez must obtain permission from the court of appeals.

ORDERED in Tampa, Florida, on September 29, 2025.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE